17-2094-SAG  to  17-2096-SAG

## AFFIDAVIT IN SUPPORT OF APPLICATION FOR SEARCH WARRANT

Your Affiant, Roger Cochran, being duly sworn, deposes and states the following:

## INTRODUCTION

1.        This affidavit is submitted in support of an application for a search warrant, pursuant to Rule 41 of the Federal Rules of Criminal Procedure, and Title 18, United States Code, Section 2703, to search the following:

> a. an Asus cell phone Model Z00D, hereinafter referred to as the "Asus" in the custody of the Department of Homeland Security, at the U.S. Custom House in Baltimore, MD., further described in Attachment A1 to be searched as described in Attachment B

> b. a LG cell phone Model H634, hereinafter referred to as the "LG", in the custody of the Department of Homeland Security, at the U.S. Custom House in Baltimore, MD., further described in Attachment A2 to be searched as described in Attachment B.

> c. a Samsung Galaxy Note 3, hereinafter referred to as the "Samsung" in the custody of the Department of Homeland Security, at the U.S. Custom House in Baltimore, MD., further described in Attachment A3 to be searched as described in Attachment B.

2.        As set forth below, there is probable cause to believe that a search of the three cell phones listed above will uncover the evidence, fruits, and/or instrumentalities of violations of  18 U.S.C. § 1343 (Wire Fraud), 18 U.S.C. § 1344 (Bank Fraud), and 18 U.S.C. § 1028A (Aggravated Identity Theft).

———— FILED ————— ENTERED
———— LOGGED ——— RECEIVED

AUG 1 5 2017

AT BALTIMORE
CLERK, U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY                             DEPUTY

2014R00389
JTM

3.      The procedure by which the government will search the cellular phones and seize the information contained are described in Attachment B.

### AFFIANT

4.      Your affiant is currently employed by the U. S. Department of Homeland Security, Homeland Security Investigations (HSI)[1], as a Special Agent and has been so since April 2002. As part of my employment with HSI, I attended the Criminal Investigator Training Program, which is a basic program for all Federal criminal investigators, and the Customs Basic Enforcement School, which was a more specialized training program for United States Customs agents. Both of these courses were held at the Federal Law Enforcement Training Center. During both these courses, instruction was given on basic investigative techniques; federal controlled substances laws; money laundering techniques; types of import and export violations and various surveillance techniques.

5.      Your affiant is currently assigned to the HSI Baltimore Border Enforcement Security Team (BEST), investigating unlawful acts and violations of federal customs law. In the course of my employment, I have participated in numerous federal and state narcotics investigations relating to drug trafficking, drug smuggling, alien smuggling, money laundering violations, financial fraud and the illegal export of stolen motor vehicles. The information in this affidavit is based on my personal knowledge and information provided to me by other law enforcement officers.

---

[1] In 2003, the United States Customs Service ("USCS") was disbanded and the investigative component of "USCS" was merged into a new agency, Immigration & Customs Enforcement ("ICE"), under the newly formed Department of Homeland Security ("DHS"). In 2010, "ICE" underwent a re organization at which time "ICE" criminal investigators were moved under the auspices of the newly formed agency known as Homeland Security Investigations ("HSI").

6.     Your Affiant is familiar with the facts and circumstances of this investigation based upon his review of the available information as well as information provided to your Affiant from others involved with the investigation currently being conducted. Your Affiant has not included every fact known through the course of the investigation within this affidavit but has included those facts your Affiant believes are sufficient to establish probable cause that the violations set forth above have occurred and are occurring.

7.     Your affiant based on his knowledge, training and experience knows that members of criminal organizations utilize cellular phones to store digital evidence related to ongoing fraud scheme and to communicate details of those schemes via text messages, emails, and phone calls. It is common for members of criminal organizations to utilize cellular "smart" phones to access various online messaging "apps" to communicate outside of traditional cellular networks.

## STATEMENT OF FACTS

### A.     Arrest Warrants, Indictments.

8.     This investigation has been ongoing since April 22, 2013, when your affiant assisted the Howard County Police Department (HCPD) and the Prince Georges County Police Department (PGPD) with the service of a search and seizure warrant at 9120 Stebbing Way, Apt. B, Laurel, Howard County, MD 20723. During the execution of this search warrant numerous vehicle keys were located in the bedroom of the apartment. These keys were found to operate eight stolen vehicles which were parked in various locations in the vicinity of Eric OLANIYAN's apartment. These eight vehicles had been reported stolen to police in Prince George's County, Maryland, Washington, D.C. and Nassau County, NY. On April 22, 2013, Eric OLANIYAN (DOB: XX/XX/1960) was arrested by HCPD and charged with violations of

3

Maryland law. The investigation established that Issah MOHAMMED and Mohammed

KWANING were associates who had delivered, or caused to be delivered, the eight stolen motor

vehicles delivered to that location.

9.      On April 25, 2013, an arrest warrant issued for Eric OLANIYAN in the United

States District Court for the District of Maryland based on a criminal complaint charging Eric

OLANIYAN with the sale or receipt of stolen motor vehicles in violation of 18 US.C. § 2313(a).

Subsequently, Eric OLANYIYAN was indicted by a federal grand jury in Baltimore, MD.

OLANIYAN ultimately pled guilty to Conspiracy to Commit Interstate Transportation of Stolen

Motor Vehicles, in violation of 18 U.S.C. § 371, and was sentenced to 21 months in prison, to be

followed by 3 years of supervised release on June 9, 2014.  See JFM 13 0589.

10.      On December 8, 2014, U.S. Magistrate Judge Sullivan, issued an arrest warrant

for MOHAMMED for Wire Fraud, in violation of 18 U.S.C. § 1343, based on a criminal

complaint affidavit submitted by your affiant, as well as a search warrant for what the

investigation had indicated was MOHAMMED's current address, 3428 Andrew Court, Apt. 302,

Laurel, MD.  See 14-2834 TJS.  The affidavit in support of the criminal complaint and search

warrant detailed a fraudulent wire transfer in the amount of $65,000 sent to a business account

associated with both MOHAMMED and KWANING in the name of BEST DEALS AUTO at

NAVY FEDERAL CREDIT UNION on August 6, 2014.  Over $12,000 of these funds were

eventually traced to accounts in KWANING'S name or accounts of known associates of

KWANING'S.

11.      On December 11, 2014, MOHAMMED was arrested in the parking lot of 13842

Castle Blvd., Silver Spring, MD 20904.  The investigation indicated that MOHAMMED had

recently moved to this location and he had limited personal effects with him, which included two

4

cellular phones (an Apple iPhone and a HTC smart phone Model: PN07120, FCC ID: NM8PN07120, P/N: 99HTT004-00). The Criminal Complaint was replaced with an Indictment which charged MOHAMMED with Wire Fraud. See ELH 14 0600.[2]

12.     During the execution of the search warrant on MOHAMMED's HTC smart phone, text messages exchanged between MOHAMMED, Mark DENNIS and Abayomi DAVIES were recovered. These text messages were, in part, related to fraudulent back accounts opened by DENNIS and DAVIES.

13.     On May 9, 2014, MOHAMMED received a text message from DENNIS at (240) 360-8877 with the following information: "Mark Dennis, 3211 Dunnington Road, Beltsville, MD 20705, ss XXX XX 4317, XX/XX/1987".

14.     On May 13, 2014, MOHAMMED received a message from DENNIS at (240) 360-8877 with the following information "240-483-9872 Joshua Ramcharan." This is the same day that DENNIS opened an account at TD Bank in the name MARK LOGISTICS and attempted to deposit a fraudulent $567,000 check. Joshua Ramcharan was the TD Bank employee who assisted DENNIS with opening the bank account.

15.     On June 17, 2014, MOHAMMED sent DAVIES a text message which read "They doing it for you". This is the same day DAVIES opened a bank account in the name GOOD DEALS AUTO, LLC. at TD Bank in Silver Spring, MD and deposited a $24,702.28 fraudulent check into the account.

16.     On June 20, 2014, DAVIES sent IM a text which read "Yo bro the thing is cooked so let's go eat this morning". This is the same day that DAVIES withdrew $14,875 in the form of a cashier's check, payable to Issah MOHAMMED, from a Capital One Bank account number

---

[2] The matter was reassigned and now the case number is JFM 14 600.

XXXXXX1207 in the name GOOD DEAL AUTOS, LLC. This transaction was made at the

Silver Spring, MD branch of Capital One bank and the funds had been previously obtained by

fraud.

    B.    <u>Prior Search Warrants</u>.

    17.    There have been numerous other warrants and applications authorized and

executed during the course of this investigation, all of which sought information related to the

aforementioned charges involving KWANING, DENNIS, and MENSAH, including, but not

limited to[3]:

    a.    Yahoo! Inc. for email accounts sasco2g2@yahoo.com and issahadams@yahoo.com, Google, Inc. for email accounts safewayshipping2012@gmail.com, joluyemi18@gmail.com, eadeyemi116@gmail.com, mkkwaning@gmail.com (13 1958 and 13 1959 TJS)

    b.    Yahoo! Inc. for email account africanenergy@yahoo.com (14 211 BPG);

    c.    Tracking Warrant for a silver 4 door Hyundai (14 1730 SAG);

    d.    2703(d) Order to AOL for email tierndav@aol.com (14 578 JMC);

    e.    AOL Inc. for email account tierndav@aol.com, and two cellular telephones seized from Issah MOHAMMED on 12/11/14 (14 2911 and 14 2912 JMC);

    f.    HP Pavilion Computer and Playstation seized from a shipping container and Facebook user profiles for issah.mohammed (15 503 and 15 504 TJS);

    g.    Tracking Warrants for a silver 4 door Hyundai and 2006 BMW sedan (15 662 and 15 663 TJS); and

    h.    13842 Castle Blvd., Apt. 201, Silver Spring, MD and a silver 4 door Hyundai (15 992 and 15 993 BPG).

    C.    <u>Confidential Sources</u>.

    18.    Multiple confidential sources have been developed during the course of the

investigation. On May 17, 2013, during an interview with Confidential Source 1 (CS 1), he/she

indicated that Mohammed KWANING was one of the people who brought OLANIYAN stolen

---

[3] The search warrants are referenced here but not incorporated herein. They are available for review, along with the returns, if the Court would like to review them. This list is non-exhaustive and does not include any applications made in state courts related to this investigation.

vehicles to ship to Africa.  During a second proffer session on July 9, 2013, CS 1 identified Issah

MOHAMMED as KWANING's friend who also provided stolen vehicles to ship to Africa.

19.     On September 4, 2015, Confidential Source 2 (CS 2) was interviewed and

identified "Kofi" as Mohammed KWANING.  CS 2 was familiar with the communications

between KWANING and Issah MOHAMMED, and identified text messages on Issah

MOHAMMED'S phone exchanged between "Kofi" and Issah MOHAMMED as exchanges

between KWANING and MOHAMMED.  CS 2 indicated that KWANING and MOHAMMED

were involved in a wire/bank fraud scheme and that MOHAMMED would recruit people to open

bank accounts and then KWANING would provide MOHAMMED with fraudulent checks to

have deposited into those accounts.  If the check fraud scheme was successful, MOHAMMED,

KWANING and the person who opened the account would each be paid a percentage of the

money withdrawn from the account.

D.     Superseding Indictment and Arrests

20.     On May 19, 2016, a federal grand jury for the District of Maryland handed up a

Superseding Indictment against Mohammed KWANING, Issah MOHAMMED, Sandra BADU,

Francis Osei FOSU, Mark DENNIS, Charles MENSAH and ABAYOMI DAVIES.  See JFM 14

600.  The Superseding Indictment charges KWANING and all the other defendants in Count One

with a Conspiracy to Commit Bank and Wire Fraud from in or about March 2014 , in violation

of 18 U.S.C. § 1349. The Superseding Indictment also charged various members of the

conspiracy with separate violations of Bank Fraud, in violation of 18 U.S.C. § 1344 (Counts

Three, Four, Five, Seven and Nine) and Wire Fraud, 18 U.S.C. § 1343 (Counts Six and Eight).

KWANING was also charged with Aggravated Identity Theft, in violation of 18 U.S.C. § 1028A

(Count Two), Conspiracy to Transport Stolen Motor Vehicles, 18 U.S.C. § 371 (Count Ten), and

7

Receipt/Possession of Stolen Motor Vehicles, in violation of 18 U.S.C. § 2313 (Counts Eleven through Fourteen).

21.     On May 26, 2016, all of the charged defendants, with the exception of MENSAH and MOHAMMED, were arrested by Homeland Security Investigations in Maryland and Texas. KWANING was arrested 7903 Orion Circle, #231C, Laurel, MD 20724 where he was found to be living with Arlene ROSS.  BADU and DENNIS were interviewed, post *Miranda*, and acknowledged, in sum and substance, that they had opened bank accounts and cashed checks or attempted to cash checks and withdrew funds or attempted to withdraw funds from said accounts which they acknowledged were fraudulent.  DENNIS also indicated that he had exchanged text messages with MOHAMMED regarding the bank accounts.[4]

22.     On  May 26, 2016, the LG and ASUS phones were seized from DENNIS at the time of his arrest.  During his post *Miranda* interview, DENNIS consented to allow agents to search both of his cellular phones.  However, the following day, before these devices could be examined, DENNIS appeared at the HSI Baltimore field office and requested that his phones be returned to him.  DENNIS was informed that the phones were being held as evidence and they could not be returned to him at that time.  The LG and ASUS phones have been in the custody of HSI Baltimore since May 26, 2016. To date, no effort has been made to forensically examine these phones.

23.     On July 8, 2016, a proffer session was held with Mark DENNIS and his attorney. At that time, DENNIS indicated that at the direction of Issah MOHAMMED he had opened

---

[4] DENNIS was shown a number of images and at first he identified another individual as a friend of Issah MOHAMMED'S; after looking at photographs of KWANING and this other individual side by side, he identified KWANING as Issah MOHAMMED'S associate. DENNIS provided directions to the place where he met KWANING with Issah MOHAMMED, and those direction lead to the parking lot in front of KWANING'S apartment.

accounts at four banks in the name MARK LOGISTICS.  DENNIS indicated that MARK

LOGISTICS was a joint venture with MOHAMMED, and that they planned to open an

automotive dealership in Laurel, MD.  DENNIS indicated that the $567,000 fraudulent Capital

One Bank cashier's check which he attempted to deposit at TD Bank on May 13, 2014 was

startup capital for this automotive dealership.  DENNIS indicated that after he deposited the

check he received a phone call from TD Bank asking him to come back to the bank to sign

additional paperwork.  DENNIS stated that he then called MOHAMMED to relay that

information to him and MOHAMMED told him not to return to TD Bank or he would be

arrested.

24.     DENNIS also identified a picture of Mohammed KWANING during this proffer

session and indicated that he had met KWANING on two occasions while with Issah

MOHAMMED.  DENNIS indicated that KWANING had reassured him that the checks he had

deposited with MOHAMMED were legal and that he should not worry.

25.     On May 26, 2016, DAVIES was arrested by HSI Baltimore at his residence in

Laurel, MD.  At that time, DAVIES identified a picture of Issah MOHAMMED as "Gabriel" and

indicated that he had never exchanged any text messages with him regarding business bank

accounts or checks.  The Samsung phone was seized from DAVIES by S/A Rechtin.  DAVIES

consented to allow agents to search his LG phone and that phone was briefly examined by S/A

Rechtin during his post Miranda interview with DAVIES.  However, DAVIES later asked for an

attorney to be present and the interview was terminated.  The LG phone was preliminarily

searched by SA Rechtin and S/A Cochran but it was never fully forensically examined.  The LG

Phone has remained in HSI Baltimore custody since May 26, 2016.

26.    Between July 29, 2016, and January 18, 2017, MOHAMMED, BADU, DAVIES, and FOSU pled guilty pursuant to the terms of written plea agreements. See JFM 14 600. A three week jury trial is set to commence October 16, 2017, for KWANING, DENNIS, and MENSAH.

27.    Based on your Affiant's training, knowledge, and experience, it is common for those engaged in criminal activity to utilize cellular phones to store digital evidence related to ongoing fraud schemes. Further, based on your Affiant's training, knowledge, and experience, it is common for those engaged in criminal activity to utilize cellular phone to communicate through various platforms to include social media accounts and smart phone applications which allow them to communicate with a certain degree of anonymity. During the course of this investigation, it has been determined that the members of the conspiracy communicated extensively on an application called WhatsApp, a service that facilitates communication and provides end-to-end encryption of messages.

28.    Based on forensic analysis of various cell phones, computers, and other digital storage media, members of the conspiracy, to include KWANING, MOHAMMED, FOSU, DENNIS, and DAVIES, communicated utilizing emails and text messages, sometimes sent encrypted by WhatsApp. There is probable cause to believe that a search of the cell phones listed above will uncover the evidence, fruits, and/or instrumentalities of violations of 18 U.S.C. § 1343 (Wire Fraud), 18 U.S.C. § 1344 (Bank Fraud), and 18 U.S.C. § 1028A (Aggravated Identity Theft).

## CONCLUSION

29.    Based upon the information contained in this affidavit, your Affiant submits there is probable cause to believe that there is evidence located inside cellular phones in the custody of

HSI Baltimore, further described in Attachments A1, A2, and A3.  Your affiant further submits

that there is probable cause to believe that a search of the cell phones, in accord with Attachment

B, will uncover the evidence, fruits, and/or instrumentalities of violations of 18 U.S.C. § 1343

(Wire Fraud), 18 U.S.C. § 1344 (Bank Fraud), and 18 U.S.C. § 1028A (Aggravated Identity

Theft).


Roger Cochran, Special Agent
U.S. Department of Homeland Security
Immigration and Customs Enforcement
Homeland Security Investigations (HSI)


Subscribed and sworn to before me this ___31 ST___ day of July, 2017.


HON. STEPHANIE A. GALLAGHER
UNITED STATES MAGISTRATE JUDGE
DISTRICT OF MARYLAND

## ATTACHMENT A-1

### Description of the Asus Phone:

Asus smart phone, Model: Z00D,  IMEI 014327003318467, S/N: FBAZCY053091



**ATTACHMENT A-2**

**Description of LG Phone:**

LG smart phone, Model: LG-H634, IMEI: 359565066070698, S/N: 601CYKJ607069



## ATTACHMENT A-3

### Description of Samsung Phone:

**Samsung smart phone, Model: SM-N900T, IMEI358917/05/27/5966/2, S/N: RV8F103RZ4Z**



**Attachment B**

1.      The cellular phones listed in Attachments A1-A3 may be searched for the following
items:

   a.      Any and all documents or correspondence identifying persons transmitting,
           receiving or possessing, through interstate commerce including by U.S. Mails or
           by computer, any personal data identifiers.

   b.      Any and all records, documents, invoices and materials that concern any accounts
           with any Internet Service Providers, financial or lending institutions, and
           references to currency or equivalent fiduciary documents used to transfer wealth.

   c.      Any and all address books, mailing lists, supplier lists, mailing address labels, and
           any and all documents and records pertaining to the preparation, purchase, and
           acquisition of names or lists of names to be used in connection with the purchase,
           sale, trade, or transmission, through interstate commerce including by United
           States Mails or by computer, any personal data identifiers, identification
           documents, and/or bank and credit card accounts. Any documents or property
           displaying, or related to, the names of other theft victims.

   d.      Any and all electronically stored calendars, diaries, notebooks, notes, and any
           other records reflecting personal contact and any other activities involving
           meetings between or contact with two or more members of the conspiracy. Any
           documents displaying or related to members of the conspiracy, to include phone
           numbers, phone directories, computer directories and files, personal directories,
           picture phones and their contents, credit card accounts, financial statement papers
           and account information, photographs of conspirators together, any video or audio
           tapes of conspirators together, correspondence between members of the
           conspiracy.

   e.      Any documents, including text messages, emails, photographs, and/or video,
           referencing or depicting vehicles, vehicle parts, vehicle identification numbers,
           and/or documents or vehicle registration plates. Any documents/electronic media
           related to vehicle keys or vehicle key codes.

   f.      Any documents regarding the rental of other storage units or shipping containers.

   g.      Any paper stock, printers, laminators, label makers or devices believed to be used
           for the manufacturing of fraudulent vehicle titles, vehicle paperwork, vehicle
           labels and vehicle VIN plates. All other items which are commonly stolen from
           vehicles. All other items which the investigators believe to be stolen property or
           contraband.

h. Images of or references to tools commonly used during the theft of vehicle including: screwdrivers, pry bars, dent pullers, pop-rivet guns, pop-rivets, wire cutters, flashlights, keys, master keys, steel die stamps used to create alpha characters and numeric characters on metallic objects, and other tools determined to be used to steal vehicles, disassemble vehicles, or alter the identification of vehicles.

2. Any of the items described in paragraph 1 above which are stored in the form of magnetic or electronic coding on computer media or on media capable of being read by a computer with the aid of computer-related equipment, including fixed hard disks, or removable hard disk cartridges, software or memory in any form. The search procedure of the electronic data contained in the operating software or memory devices shall include the following techniques which shall be used to minimize the risk that those conducting the search will view information not within the scope of the warrant:

a. surveying various file "directories" and the individual files they contain (analogous to looking at the outside of a file cabinet for markings it contains and opening a drawer believed to contain pertinent files);

b. "opening" or cursorily reading the first few "pages" of such files in order to determine their precise contents;

c. "scanning" storage areas to discover and possible recover recently deleted files;

d. "scanning" storage areas for deliberately hidden files; or

e. performing key word or other search and retrieval searches through all electronic storage areas to determine whether occurrences of language contained in such storage areas exist that are intimately related to the subject matter of the investigation.

3. If after performing these procedures, the directories, files or storage areas do not reveal evidence of fraud or financial crimes and items that related to or constitute evidence, fruits, or instrumentalities of violations of 18 USC §§ 1343, 1344 or 1028A, the further search of that particular directory, file or storage area, shall cease.